## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| |
|---|
| UNITED STATES OF AMERICA |
| |
| v. |
| |
| MASSIMO MARENGHI |

Docket No. 1:21-mj-07091-JCB

## <u>DEFENDANT'S MOTION FOR RELEASE ON CONDITIONS</u>

The defendant, Massimo Marenghi ("Marenghi"), by and through undersigned counsel, hereby respectfully opposes the government's motion to detain him pending adjudication of the criminal charge against him and moves this Honorable Court to release him on conditions, pursuant to 18 U.S.C. § 3142(a)(2).  As grounds therefor, Marenghi avers the government is unable to satisfy its burden to establish by clear and convincing evidence that the combination of conditions proposed herein will not "reasonably assure the appearance of [Marenghi] as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). Specifically, Marenghi submits the following specific conditions of release amply satisfy the bail statute:

- He is subject to GPS monitoring, to include an exclusion zone for the *entirety* of the city of Malden.

- He resides with his father Franz (77) and his mother Tina (75) at their Cape Cod residence, located at 84 Uncle Rolf Road in Dennisport, MA[1], where he shall remain on 24-hour home confinement, except for medical, mental health/counseling, and legal appointments with advance notice to U.S. Pretrial Services.

- He is subject to the third-party suretyship of his mother and father.

---

[1] According to the website distance-cities.com, the driving distance between Dennisport and Malden, MA is 85 miles; driving time is 1 hr. 37 minutes, if non-stop.

- He attends bi-monthly telemedical appointments with his pre-existing mental health and substance abuse counselors.

- He surrenders his U.S. Passport and not apply for a new one if expired.

- He signs a $25,000 unsecured appearance bond; and

- He stays away from, and has no contact with, any witness in connection with the above-numbered matter.

## APPLICABLE LAW

Marenghi has been charged by way of criminal complaint which alleges he made use of interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958. ECF#1. The government has moved to detain Marenghi pending trial on the grounds that he is both a risk of flight and that he presents a safety risk to his ex-wife, the subject of the alleged murder-for-hire plot. As this Court recently explained:

> Under the Bail Reform Act, a defendant may only be detained pending trial if the government establishes either by clear and convincing evidence that the person poses a danger to the safety of any other person or the community if released, or by a preponderance of the evidence that the person poses a serious risk of flight. If there is some risk, the Court should consider whether a combination of release conditions will serve as a reasonable guard.
>
> In determining whether suitable release conditions exist, the judicial officer must take into account the following: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the accused, including family ties, employment and other factors; and (4) the nature and seriousness of the danger posed by the person's release. Each of these factors must be weighed, and the decision on whether to release is an individualized one.

*United States v. Marrero*, No. CR 19-10459-RWZ, 2020 WL 2520109, at *1 (D. Mass. May 4, 2020), *citing* 18 U.S.C. §§ 3142(f), (g) & *United States v. Patriarca*, 948 F.2d 789, 791-94 (1st

Cir. 1991) (internal quotations omitted).[2]

## ARGUMENT

### A.  Marenghi's Background and Circumstances

Marenghi is a 54 years-old life-long resident of Malden, Massachusetts. At the time of his arrest, he had been living with his septuagenarian parents in their Malden residence since approximately 2019 when his marriage became fractured. A former driver for Uber and Lyft, he has been unemployed for nearly a year, partially due to the COVID-19 pandemic—but this appears to have merely hastened the inevitable. Marenghi is mostly disabled due to chronic, long-term back and nerve pain occasioned by degenerative disc disease which has become so severe that he currently requires the use of a walker, as well as frequent steroid injections for pain treatment. Now in his mid-fifties, he arrived at this point having survived two (2) motorcycle crashes (the first of which resulted in nine (9) broken toes, shattered right patella and a broken femur, which required the surgical insertion of a metal rod for stabilization) and a serious fall from his roof. As so often happens, treatment for pain management led to an opioid addiction which, in turn appears to have led to a major depression diagnosis.

Marenghi, however, has made efforts to overcome these setbacks. He actively sought substance abuse counseling which he had been attending regularly on a bimonthly basis and until his arrest had been taking suboxone, the combination of which managed to bring his addiction under control. He also sought mental health treatment from two (2) providers and had been

---

[2] Notably, the government does not enjoy the benefit of the rebuttable presumption in favor of Marenghi's detention because none of the prerequisites to its application, *see* 18 U.S.C. § 3142(e)(3)(A)-(E), appear to apply.

attending therapy sessions a total of three (3) times a week.[3] As referenced above, he also sought help with pain management, through physical therapy, steroid injections in his neck and back, and chiropractic treatments.

This physically ruined man now appears before this Honorable Court with a devoted family standing behind him. His sisters, and elderly parents, for example, helped privately retain undersigned counsel on the heels of their brother's, and son's, arrest. When undersigned counsel asked one of his sisters what she knew about her brother's medical history, she replied with a bullet point list of not only his conditions and medications, but also the names and contact information for the myriad medical professionals he sees.[4] Another sister offered him residency in her Peabody home, with her and her husband serving as third party surety; his brother offered him potential residency in Lynn. In sum, Marenghi is supported by people who want to see him well again, people who undersigned counsel considers to be not only well-positioned to keep him on the

---

[3] In addition to major depression, Marenghi has been diagnosed with post-traumatic stress disorder (PTSD) and obsessive-compulsive disorder (OCD), for which he had been prescribed Paroxetine—a serotonin reuptake inhibitor (SSRI)—in connection with his mental health treatment.

[4] Undersigned counsel has submitted record requests to Marenghi's various medical providers on an expedited basis but does not anticipate they will be received as of the scheduled detention hearing. However, a "Problem List" and "Active Med List" was received from Marenghi's primary care physician, Dr. Laura Carman. *See Tufts Medical Center Problem List & Active Med List*, attached hereto as Exhibit A. This reflects some of the diagnoses (e.g., hypertension, major depression, anxiety disorder, degenerative disc disease, opioid abuse, chronic pain) and prescriptions (suboxone) referenced herein. Additionally, some records have been received from Blake Medical LLC and CDI Diagnostic Imaging which reflect the severity of his back injuries and a history of hypertension which had been treated with Lisinopril (an ACE inhibitor). *See Blake Medical LLC, Office Visit Notes*, attached hereto as Exhibit B; *CDI Diagnostic Imaging, Lumbar MRI Examination*, attached hereto as Exhibit C. Moreover, it should be noted that both of his sisters, as well as his parents, have repeatedly described the defendant as "mentally slow"; while undersigned counsel does not have formalized mental health/acuity training, he has personally observed indications of slower than average mental processing skills during his remote-access contacts with the defendant to date.

straight and narrow, but who are clearly invested in his well-being and reliable enough to be counted on to report any lapses or violations of any order imposed by the Court. His parents are proffering a stable home for him to return to, far removed from the Malden area, in which they agree to remain in residence during the pendency of his case, should he be released on the conditions herein imposed. The defendant already has mental health and substance abuse professionals available to him, who know his history and are well-suited to address the change in his circumstances. With the body of a 90 year old,[5] no financial-resources, and noticeably limited mental capacity, he poses no threat under the proffered conditions.

**B.  The Government Is Unable to Meet Its Burden**

In its "assessment of danger," U.S. Pretrial Service's bail memorandum cites, *inter alia*,

---

[5] Although Marenghi does not appear to have any COVID-19 co-morbidities which the Centers for Disease Control and Prevention (CDC) has determined pose an increased risk for severe illness from the virus, he does have a history of hypertension. *See* Ex. A, B. Indeed, he was taken to Whidden Hospital by the Everette Police Department on the night of his arrest due to chest pain and was placed in observation by medical staff at Wyatt due to dizziness and high blood pressure readings. Relatedly, Marenghi's father had a stroke last year and suffers from heart disease (atrial fibrillation); his sister reports that virtually all the aging men in her family have either died from heart disease or have conditions related thereto and his father reports two of his brothers died from heart ailments. The CDC has cautioned that persons with hypertension, family histories with heart disease or are overweight "might be at an increased risk for severe illness from the COVID-19 virus." *See People with Certain Medical Conditions*, CDC (available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html). Such risk is exacerbated by the defendant's admitted 2-3 pack per day cigarette smoking habit.

In sum, Marenghi's continued detention at Wyatt, a facility yet have vaccinated a single inmate/detainee (per Vaccination Stats from the USMS today, as forwarded by the FDO), presents a cognizable risk to his physical safety, given his significant personal and family medical history and the periodic re-emergence of the COVID-19 virus within the facility, which according to family members has resulted in detainees in the cells on either side of him currently being COVID positive. Currently, Wyatt houses nineteen (19) detainees who are positive for COVID-19; the Plymouth County and Norfolk County correctional facilities have over ninety (90) positive cases, each.

"prior arrests and convictions," "pretrial, probation, parole, or supervised release compliance," and a "pattern of similar criminal activity history" to buttress its recommendation that Marenghi not be released. These categories appear entirely misplaced. Marenghi's criminal record, as set forth in the bail memorandum, neither reflects he was ever arrested in connection with any of the charges set forth therein nor that he has ever been convicted of an offense.[6] Indeed, contrary to what US Pretrial Service's bail memorandum may claim, his record reflects continuous compliance with conditions of pretrial release and probation; for each of his three (3) CWOF's Marenghi was placed on probation (for a full year in one case) and the matters were ultimately dismissed presumably because he complied with its terms. Similarly, U.S. Pretrial Services makes note of the fact that he has "two default warrants" associated with alleged restraining order violations. While this is technically true, the docket sheet for both matters[7] reflect Marenghi appeared as required while these matters have been pending and that those warrants all issued in each case during a court event on February 1, 2021, *after* he was arrested and held on the instant charges and therefore physically precluded from appearing.[8] If anything, his record establishes a reliability of compliance once brought within the ambit of a given court's jurisdiction.

---

[6] He did receive continuations without finding ("CWOF") for trespassing when he was 17 and for motor vehicle license plate/compulsory insurance related offenses.

[7] *Commonwealth v. Marenghi*, 2050CR406, Docket Sheet, attached hereto as Exhibit D; *Commonwealth v. Marenghi*, 2050CR892, Docket Sheet, attached hereto as Exhibit E.

[8] Moreover, it does not appear these cases are grounded in the kind of "domestic violence" U.S. Pretrial Services has suggested in its memorandum. Court documents filed in connection with the Docket 2050CR406 state that it was alleged Marenghi violated the restraining order because he "dr[ove] past [the complainant's] workplace, pull[ed] over, stop[ped] and wave[d]." In a similar vein, the Commonwealth's motion to revoke Marenghi's bail on the first complaint when he appeared for arraignment on the second one was denied by the Hon. Emily A. Karstetter. *See* Ex. E. In undersigned counsel's experience, had the second alleged violation been more akin to "domestic violence," the Commonwealth's motion almost certainly would have been allowed.

The remaining factors identified by U.S. Pretrial Services also weigh in favor of Marenghi's release. His mental health and substance abuse history reflects a struggle with major depression and opioid dependence. We, as a country, however, do not use a person's suffering with a mental defect or their past struggles with addiction as a basis for deprivation of liberty—particularly not when such person has independently sought and continued with counseling and medical treatment. Again, that Marenghi has followed the advice and aid of his medical professional further establishes his ability to comply with orders.

There is no dispute that the charges Marenghi faces, as well as the alleged underlying conduct, are of the utmost seriousness. But the nature of this conduct when considered in conjunction with Marenghi's physical characteristics further establishes the safety concerns here are remote when weighed within the parameters of the proposed conditions on which he would be released. Marenghi currently requires use of a walker, suffers from chronic pain, and is overweight; he is simply physically incapable of activity that could potentially pose a risk to any other person. The risks raised by the alleged underlying offense conduct here—an attempt to convince another to do violence on his behalf—are sufficiently mitigated for purposes of bail considerations by the conditions proposed herein which include, *inter alia*, a.) GPS monitoring, b.) 24/hour lock down house arrest, c.) no use of phones or internet except as required for legal/medical, d.) and complete exclusion for any purpose from the city where the sole alleged victim in this case still resides—all while overseen by third-party sureties at a residence far removed from her current domicile. It is respectfully submitted that the question before the Court is not whether Marenghi is *alleged* to have done something reprehensible, or merely whether the underlying conduct posed grave risks to another. Rather, the question is instead whether evidence of that conduct is sufficient to establish by clear and convincing evidence that the combination of conditions proposed herein are not

enough to ensure the safety of the community and his appearance before the Court. Again respectfully, it is a far cry from what the government has alleged in the pending criminal complaint—meeting(s) to discuss a murder-for-hire plot allegedly commissioned by an individual with insufficient funds to actually pay for it—to presenting him as a continuing threat to potentially commit another/similar crime while subject to the onerous and strict conditions proposed herein.

Finally, even were this Court to conclude that Marenghi is likely destined toward conviction and federal imprisonment on the weight of the evidence as presented by the government at hearing, quintessential considerations of deterrence and rehabilitation ought to animate this Court's decision here. Marenghi's prospective continued detention constitutes a complete disruption of both his ongoing mental health, substance abuse counseling/treatment, and chronic pain management. By contrast, his release on strict conditions will permit him to continue such counseling and treatment(s) to prepare him for possible long-term incarceration as well as to safely titrate him from the opioid antagonists he is presently dependent on. Marenghi is a relatively young man and is facing a maximum penalty of 10 years. If anything, his release into the hands of capable psychiatric and medical conditions professionals, with whom he has developed relationships of mutual trust, as well as subjecting him to the watchful eyes of his concerned immediate family-members, will ensure the long-term safety of the community to a substantially greater extent than will his detention.

WHEREFORE, the defendant respectfully requests his motion for release on conditions be granted.

Dated: February 9, 2021

Respectfully submitted,
MASSIMO MARENGHI
By and through his attorney,

 /s/ *R. Bradford Bailey*
R. Bradford Bailey, BBO#549749

8

BRAD BAILEY LAW, P.C.
44 School Street, Suite 1000B
Boston, Massachusetts 02108
Tel.: (857) 991-1945
Fax: (857) 265-3184
brad@bradbaileylaw.com

**<u>Certificate of Service</u>**

I, R. Bradford Bailey, hereby certify that on this the 9th day of January, 2021, I caused a true copy of the foregoing *Opposition to the Government's Motion for Detention* to be served upon all necessary parties via CM/ECF system.

 /s/ *R. Bradford Bailey*
R. Bradford Bailey